NOT FOR PUBLICATION

FILED

UNITED STATES COURT OF APPEALS

FEB 20 2018

FOR THE NINTH CIRCUIT

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

| | |
|---|---|
| WILLIAM SCOTT PHILLIPS; SUZANNE SCHMIDT PHILLIPS; WILLIAM COTTRELL, on behalf of themselves and all others similarly situated, | No. 16-17189 |
| | D.C. Nos. 5:15-cv-04879-LHK 5:15-cv-05205-LHK |
| Plaintiffs-Appellants, | |
| v. | MEMORANDUM* |
| APPLE INC., | |
| Defendant-Appellee. | |

Appeal from the United States District Court
for the Northern District of California
Lucy H. Koh, District Judge, Presiding

Submitted February 15, 2018**
San Francisco, California

Before: HAWKINS and TALLMAN, Circuit Judges, and MURPHY,*** District Judge.

---

*        This disposition is not appropriate for publication and is not precedent except as provided by Ninth Circuit Rule 36-3.

**        The panel unanimously concludes this case is suitable for decision without oral argument.  *See* Fed. R. App. P. 34(a)(2).

***        The Honorable Stephen Joseph Murphy III, United States District Judge for the Eastern District of Michigan, sitting by designation.

William Phillips, Suzanne Phillips, and William Cottrell (plaintiffs) appeal the district court's dismissal of their putative class action against Apple, Inc. for alleged violations of California's Unfair Competition Law (UCL), Cal. Bus. & Prof. Code § 1700 *et seq.*, and False Advertising Law (FAL), Cal. Bus. & Prof. Code § 17500 *et seq.* We have jurisdiction under 28 U.S.C. § 1291. We review *de novo* the district court's dismissal for lack of standing and failure to state a claim. *Valle del Sol Inc. v. Whiting*, 732 F.3d 1006, 1014 (9th Cir. 2013) (standing); *Lipton v. Pathogenesis Corp.*, 284 F.3d 1027, 1035 (9th Cir. 2002) (failure to state a claim). We affirm.

1. Plaintiffs do not have standing to seek an injunction. "Standing must be shown with respect to each form of relief sought," and a plaintiff seeking injunctive relief "must demonstrate that he has suffered or is threatened with a concrete and particularized legal harm, coupled with 'a sufficient likelihood that he will again be wronged in a similar way.'"[1] *Bates v. United Parcel Serv., Inc.*, 511 F.3d 974, 985 (9th Cir. 2007) (citation and internal quotation omitted) (quoting *City of Los Angeles v. Lyons*, 461 U.S. 95, 111 (1983)).

Plaintiffs established a past injury: they paid data overuse charges to their third-party wireless carriers for one billing cycle after Apple enabled "Wi-Fi

---

[1] This is true even where, as here, a claim arises under state law. *Hangarter v. Provident Life & Acc. Ins. Co.*, 373 F.3d 998, 1021–22 (9th Cir. 2004).

Assist" on their Apple devices. They have not established, however, that they face a "real and immediate threat of repeated injury." *Bates*, 511 F.3d at 985 (quoting *O'Shea v. Littleton*, 414 U.S. 488, 496 (1974)). They disabled Wi-Fi Assist, so it no longer causes data overuse. Their second amended complaint did not allege that they intended to install future updates that would enable Wi-Fi Assist, or that Apple would install such updates automatically—despite the district court's warning that failure to do so could result in dismissal of plaintiffs' claims.

The fact that Apple generally encourages consumers to install software updates does not establish that plaintiffs themselves are likely to be injured by future updates. They could choose not to install updates, or they could install them and immediately disable Wi-Fi Assist. In either scenario, they will be unharmed. We also note that despite plaintiffs' contention that they "have no choice but to upgrade their iOS devices," and the fact that Apple released eleven updates to iOS 9 in 2015 and 2016, none of the plaintiffs have experienced data overages as a result of Wi-Fi Assist since they discovered and disabled the feature. Plaintiffs therefore lack standing to seek injunctive relief.

2. The district court properly dismissed plaintiffs' UCL and FAL claims. *See* Fed. R. Civ. P. 12(b)(6). The only remedies available under these statutes are injunctive relief and restitution. *Korea Supply Co. v. Lockheed Martin Corp.*, 63 P.3d 937, 943 (Cal. 2003); *Veera v. Banana Republic, LLC*, 211 Cal. Rptr. 3d 769,

3

775 (Cal. Ct. App. 2016). As described above, the plaintiffs do not have standing to seek an injunction, and they have failed to state a claim of entitlement to restitution.

Restitution under the UCL and FAL[2] "is confined to restoration of any interest in 'money or property, real or personal, which may have been *acquired* by means of . . . unfair competition.'" *Kwikset Corp. v. Superior Court*, 246 P.3d 877, 895 (Cal. 2011) (quoting Cal. Bus. & Prof. Code § 17203). A restitution order "thus requires both that money or property have been lost by a plaintiff, on the one hand, and that it have been acquired by a defendant, on the other." *Id.* Those requirements are not met here. The plaintiffs lost money in the form of data overuse charges, but that money was acquired by their wireless carriers—not by Apple.

Plaintiffs insist that there is "no support in California case law" for the proposition that a restitutionary remedy requires a close relationship between the defendant and the funds sought in restitution, but that assertion is belied by the very cases they cite. Those cases establish that a defendant may be required to make restitution where a plaintiff's loss indirectly, but clearly, inured to the defendant's benefit. *See, e.g., People, ex rel. Harris v. Sarpas*, 172 Cal. Rptr. 3d

---

[2] The restitutionary remedies provided by the UCL and the FAL "are identical and are construed in the same manner." *Hambrick v. Healthcare Partners Med. Grp., Inc.*, 189 Cal. Rptr. 3d 31, 54 (Cal. Ct. App. 2015) (citations omitted).

4

25, 47 (Cal. Ct. App. 2014) ("[Defendants] received money indirectly from customers . . . ."); *Troyk v. Farmers Grp., Inc.*, 90 Cal. Rptr. 3d 589, 618 (Cal. Ct. App. 2009) (allowing restitution where it could "be inferred a substantial portion of the service charges paid by the class members . . . were indirectly received by [defendant]"); *see also Colgan v. Leatherman Tool Grp., Inc.*, 38 Cal. Rptr. 3d 36, 62 (Cal. Ct. App. 2006) (noting that restitution is appropriate "where money or property identified as belonging in good conscience to the plaintiff could clearly be traced to particular funds or property in the defendant's possession" (quotation omitted)).

Plaintiffs did not allege that Apple received money or property, indirectly or otherwise, from their overage payments.[3] The district court explicitly invited them to do so, granting them leave to amend their complaint to "allege a sufficiently traceable connection between the money they paid and the money Apple received." Plaintiffs declined that opportunity. Absent any allegation that Apple directly or indirectly received the money plaintiffs paid their wireless carriers for excess data usage, they are not entitled to restitution, and the district court properly dismissed their UCL and FAL claims.

Costs are awarded to Appellee.

---

[3] Their reference to Apple's "history of smart engagement with wireless carriers" does not establish any link between the data overuse charges they paid to their carriers and Apple's revenue-sharing agreement with AT&T.

**AFFIRMED.**